IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANTE BURTON, | No. 4:24-CV-00761 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| C.O. CRAWFORD, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION & ORDER

### JULY 1, 2025

Plaintiff Dante Burton filed the instant Section 1983 lawsuit alleging excessive force by multiple prison officials at SCI Dallas. The parties are currently involved in discovery. Burton sought production of video evidence from Defendants, which video was provided for his review. Burton, however, alleges that Defendants have failed to produce relevant video footage that would be damaging to their case. He claims spoliation of evidence[1] and presumably seeks an adverse inference sanction therefrom.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[2] To resolve a spoliation claim, a court must conduct a two-

---

1   Doc. 24.
2   *Mosaid Tech. Inc. v. Samsung Elec. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (citations omitted); *see also* FED. R. CIV. P. 37(e) (concerning failure to preserve electronically stored information); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 467 (E.D. Pa. 2020).

part inquiry[3]: first, the Court must determine whether a party's conduct constitutes spoliation"[4]; second, "[i]f the Court finds that a party has engaged in spoliation, it must next consider the appropriate sanctions available to redress the situation."[5]

The United States Court of Appeals for the Third Circuit has established a four-part test to evaluate whether spoliation has occurred. Under this test, spoliation occurs where: (1) "the evidence was in the party's control"; (2) "the evidence is relevant to the claims or defenses in the case"; (3) "there has been actual suppression or withholding of evidence"; and (4) "the duty to preserve the evidence was reasonably foreseeable to the party."[6] As to the third element concerning suppression or withholding of evidence, "a finding of bad faith"—which may be inferred from circumstantial evidence—is "pivotal" to determining whether "sanctionable spoliation" has occurred.[7] Accidental or inadvertent conduct is insufficient to implicate sanctions like an adverse inference instruction or a presumption of the evidence being unfavorable; there must be intentional destruction or suppression of evidence.[8]

---

[3] *McCann v. Kennedy Univ. Hosp., Inc.*, No. 12-cv-1535, 2014 WL 282693, at *4 (D.N.J. Jan. 24, 2014).
[4] *Id.* (citation omitted).
[5] *Id.*
[6] *Bull v. UPS, Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citing *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)).
[7] *Id.* at 79.
[8] *Id.* (citing *Brewer*, 72 F.3d at 334).

Burton initially made two allegations regarding spoliation of evidence. He first asserted that material portions of the F-Block stationary CCTV video footage from the April 20, 2022 incident are "missing," and that this footage would show the "beating" by SCI Dallas corrections officers and would be extremely damaging to their case.[9] Second, he contended that the handheld video footage of him being escorted in a violent manner to medical and the RHU following the alleged assault "does not have the audio."[10]

The second claim has been resolved.[11] The first has not. Following two rounds of supplemental briefing ordered by the Court,[12] the issue has narrowed to a dispute regarding one stationary camera on F Block and whether that camera would have captured the use-of-force incident that occurred inside the officers' station or "bubble."

Burton has provided an affidavit attesting that "[t]here is a camera in the stairwell which looks directly into the bubble."[13] This attestation contradicts the initial affidavit[14] of Intelligence Gathering Captain Jason Williams, which was produced by Defendants in opposition to Burton's motion. In particular, paragraph

---

[9] Doc. 24 ¶ 3, 5.
[10] *Id.* ¶ 4.
[11] *See* Doc. 31 at 3, 5.
[12] *See id.* at 5; Doc. 41.
[13] Doc. 40-1 ¶ 2.
[14] Doc. 35-2.

3

11 of Captain Williams' affidavit states, "There is no camera coverage inside the officers [sic] station itself."[15]

Following the Court's second supplemental briefing Order,[16] Defendants provided a second affidavit from Captain Williams.[17] In that declaration, Captain Williams attests that "[t]here is not a stationary camera that has a direct view into the bubble" and "[t]here is no camera coverage of the bubble."[18] Captain Williams and Defendants concluded that Burton must be "mistaken."[19]

Burton, for his part, rejoined that Defendants were "not den[y]ing that there is a camera in the stairwell that face[s] the officers' station," only that it does not have "a direct view" into the bubble, which he maintained is mere "word games."[20]

The Court was thus left with two competing affidavits. According to Burton, there is a stationary camera in the stairwell that "looks directly into the bubble" and would have captured the use-of-force incident in the officers' station. Defendants, on the contrary, attest that there "is not a stationary camera that has a direct view into the bubble" and that there is no CCTV camera coverage of the officers' station.

---

[15]  Id. ¶ 11.
[16]  Doc. 41.
[17]  Doc. 42-1.
[18]  Id. ¶¶ 7-8.
[19]  Id. ¶ 9; Doc. 42 at 5.
[20]  Doc 46 at 4-5.

Neither party, however, provided any extrinsic evidence that would definitively resolve this dispute. For example, Defendants did not proffer photographic or video evidence of the stairwell camera in question that would show its location and filming direction in relation to the officers' station; nor have they provided any exemplar footage from that camera that would illustrate the camera's view and what area(s) of F Block it is positioned to record. Defendants asserted that because Burton was an inmate at SCI Dallas, "it is unclear how he could be absolutely certain what specific views are captured by any camera that he simply sees without having ever seen the footage of the cameras themselves."[21] The Court noted that, while this may be so, "certainly *Defendants* are more than capable of knowing and producing such potentially dispositive evidence."[22]

Acknowledging that it could not decide Burton's motion on the record at that time, the Court scheduled an evidentiary hearing to resolve the remaining disputes of fact.[23] That hearing was held on June 23, 2025. The Court now finds that Burton has failed to establish that Defendants acted in bad faith and actually suppressed or withheld video evidence.

As noted above, the gravamen of the instant discovery dispute involves a stationary camera in the stairwell on F Block. Burton avers that the camera is

---

[21] Doc. 42 at 5 n.1.
[22] Doc. 53 at 5.
[23] *Id.* at 6.

capable of recording inside the officers' station (or "bubble"), would have captured the alleged excessive-force incident, and thus the camera's footage was either withheld or destroyed by Defendants to cover up the incident. Defendants, to the contrary, aver that no camera—including the stationary stairwell camera—is capable of recording activities inside the officers' station.

During the June 23 evidentiary hearing, Defendants produced still photographs of the views of each of the stationary cameras on F Block.[24] Included in those photographs is the view from the at-issue stairwell camera.[25] From this camera view, one can see what appears to be the side entrance of the officers' station, but the view is extremely limited: the bottom half of the door to the bubble is solid metal and the top half (which is see-through) is divided by bars or window grids.[26] The view inside officers' station behind the divided window is even more limited.[27] Furthermore, as testified by Security Captain Jason Williams, while the prison's stationary cameras have the ability to zoom in, as the camera zooms in, the quality of the video resolution progressively deteriorates.[28] Thus, even if some type of activity was captured by the at-issue stationary stairwell camera on the date of the incident, the view from this camera—especially if zoomed in to attempt to

---

[24] *See generally* Doc. 56, Exhibit D-1.
[25] *See id.* at 12 ("CAMERA #762 F-BLK FRONT STAIRWELL").
[26] *See id.*
[27] *See id.*
[28] *See* Doc. 57, June 23, 2025 Evid. Hr'g Tran. 8:19-9:14.

see inside the officers' station—would not provide a clear or meaningful view of the interior of the officers' station. Such footage, therefore, likely would not be retained by prison officials as part of the investigation into the incident.

In sum, Burton has not carried his burden to show that Defendants intentionally withheld or destroyed relevant video evidence. Without doing so, the Court cannot find that spoliation of evidence by Defendants occurred.[29] Burton's motion alleging spoliation of evidence, accordingly, will be denied.

---

[29] *See Bull*, 665 F.3d at 73, 79. During the June 23 evidentiary hearing, Burton raised a different argument. He claimed that certain DOC policy, as well as documents from the use-of-force investigation, together indicate that video evidence of the incident was reviewed by prison officials and that this video in fact captured the use-of-force incident in the officers' station. *See* Evid. Hr'g Tran. 17:22-20:25; Docs. 46-1, 46-2, 48-1. Burton posits that this means *other* CCTV video evidence must have been suppressed or destroyed because the video footage that he was provided during discovery (from the F-Block stationary CCTV cameras and the handheld camera) did not show the use-of-force incident in the officers' station. First, the documentary evidence on which Burton relies, (Docs. 46-1, 46-2, 48-1), does not establish that video footage retained and reviewed actually captured the use-of-force incident inside the officers' station. One document merely states that "1-CCTV / 1 Hand Held Camera" footage was retained and reviewed. *See* Doc. 46-2 at 2. The other document, authored by the handheld video camera operator and in reference to the handheld video, simply indicates that a recording was made and lists the operator's name and the tape's custodian. *See* Doc. 48-1 at 4. Neither document conclusively demonstrates that video of the use-of-force incident *inside the officers' station* was captured or reviewed. Second, it is just as likely that the "1-CCTV" video mentioned in the incident report by the Security Captain shift commander (Doc. 46-2 at 2) was in fact the same CCTV footage provided to Burton for his review during discovery. Although Burton believes that it must be different footage, Captain Williams testified that whatever was retained and referenced in the incident report was the footage that would have been provided to Burton during discovery. *See* Evid. Hr'g Tran. 19:4-10. Burton, therefore, has not established that the video evidence he was provided was not the video footage referenced in the investigatory documents. Thus, there is no factual or evidentiary basis to conclude that Defendants provided benign video footage to Burton and suppressed other inculpatory footage that was used during the investigation.

**AND NOW**, upon consideration of the foregoing, **IT IS HEREBY ORDERED** that Burton's motion (Doc. 24) for "spoliation of evidence" is **DENIED**.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge